IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION


| | | |
|---|---|---|
| FLORISTS' MUTUAL INSURANCE COMPANY, | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 3:05cv369 |
| vs. | : | |
| | : | JUDGE WALTER HERBERT RICE |
| LUDY GREENHOUSE MANUFACTURING CORPORATION, *et al.* | : | |
| | : | |
| Defendants. | : | |

---

OPINION, DECISION AND ENTRY SUSTAINING CROSS-DEFENDANT
FEDERAL INSURANCE COMPANY'S MOTION TO DISMISS CROSS-
CLAIM (DOC. #28); DECISION AND ENTRY OVERRULING CROSS-
DEFENDANT FEDERAL INSURANCE COMPANY'S MOTION TO STRIKE
AFFIDAVIT, BUT SUSTAINING MOTION TO FILE SURREPLY BRIEF
(Doc. #43); DECISION AND ENTRY OVERRULING CROSS-PLAINTIFF
LUDY GREENHOUSE MANUFACTURING CORPORATION'S MOTION
FOR PARTIAL SUMMARY JUDGMENT (DOC. #36); DECISION AND
ENTRY OVERRULING, IN PART, AND SUSTAINING, IN PART,
PLAINTIFF FLORISTS' MUTUAL INSURANCE COMPANY'S MOTION
FOR SUMMARY JUDGMENT (DOC. #41); DECISION AND ENTRY
OVERRULING, IN PART, AND SUSTAINING, IN PART, DEFENDANT
LUDY GREENHOUSE MANUFACTURING CORPORATION'S MOTION
FOR SUMMARY JUDGMENT (DOC. #45); DIRECTIONS TO COUNSEL;
JUDGMENT TO ENTER ACCORDINGLY; TERMINATION ENTRY

---

This action involves one insured, two insurers and three insurance policies.[1]

---

[1]As the parties are all citizens of different states and the amount in controversy exceeds $75,000, the Court has jurisdiction under the provisions of 28 U.S.C. § 1332(a)(1).

Ludy Greenhouse Manufacturing Corporation ("Ludy") is the named insured of all

three policies. Florists' Mutual Insurance Company ("Florists")[2] is the insurer of a

Business Package Policy ("Florists Policy").[3] Doc. #2 Attachs. ##1-14. Federal

Insurance Company ("Federal") is the insurer of two insurance policies ("Federal

Policies") - - a Commercial Umbrella Policy ("Federal Umbrella Policy")[4] and a

ForeFront Portfolio Policy ("Federal ForeFront Policy")[5]. Doc. #18 Attachs. ##1-3

(ForeFront Policy), Attach. #4 (Umbrella Policy). All policies were in effect on the

_____

[2]Florists refers to itself as "Florists' Mutual Insurance Company, dba Hortica." E.g., Doc. #34 (Florists Mem. Opp'n) at 1.

[3]Policy No. BP-07437. Florists filed a certified copy of its Policy with the Court, as an attachment to its original Complaint (Doc. #2 Attachs. ##1-14), which it subsequently incorporated into its Amended Complaint (Doc. #18 ¶ 8).

[4]Policy No. 7973-04-63 ITG. Florists filed a copy of this Policy with the Court, as an attachment to its Amended Complaint (Doc. #18 Ex. #4), although the copy is not certified. While the Court will rely on this copy of the Policy, in ruling on the issues presented here (given that there is no dispute as to Policy's language), specific instructions are given to Federal regarding placing this evidence in proper Rule 56 form, at the conclusion of this Decision.
The Federal Umbrella Policy has two separate coverage sections: an Excess Follow Form Liability coverage (which adds excess limits over scheduled underlying insurance coverages) and Umbrella Liability coverage (which adds a broadening measure of coverage against many of the gaps in and between the underlying insurance coverages). Id. at L0408.

[5]Policy No. 8158-8788. Florists filed a copy of this Policy with the Court, as an attachment to its Amended Complaint (Doc. #18 Exs. ##1-3), although the copy is not certified. While the Court will rely on this copy of the Policy, in ruling on the issues presented here (given that there is no dispute as to Policy's language), specific instructions are given to Federal regarding placing this evidence in proper Rule 56 form, at the conclusion of this Decision.
The Federal ForeFront Policy has two separate coverage sections: a Directors and Officers Liability Coverage Section ("D&O section") and a Fiduciary Liability Coverage Section ("Fiduciary Liability section"). Id.

dates pertinent to the happenings described herein.

The facts that necessitated the claims made by Ludy, under the three policies, are undisputed. In short, Ludy hired a third party, Payroll Data Service, Inc. ("Payroll Data"), to process its payroll and prepare and file certain forms and sums with the Internal Revenue Service ("IRS"). Doc. #18 ¶¶ 15-24. Payroll Data prepared accurate financial forms, which it transmitted to Ludy, causing Ludy to transfer appropriate amounts to Payroll Data, for what Ludy thought was ultimate transmission to the IRS. Id. Instead, Payroll Data intentionally filed inaccurate forms with the IRS, understating the amounts owed by Ludy, transmitted significantly smaller sums to the IRS than Ludy owed (and which Ludy had transferred to Payroll Data) and kept the rest. Id. The IRS eventually investigated and determined that incorrect returns were intentionally and fraudulently filed by Payroll Data, on behalf of Ludy. Id. As a result, Ludy had to pay $380,322, which represented the amount of the original obligations, as well as interest in the amount of $45,108, for a total of $425,430. Id. It is this sum that Ludy attempts to claim under the three policies in question.

Florists originally brought suit for declaratory judgment, under 28 U.S.C. §§ 2201, 2202, naming Ludy as the Defendant and seeking a declaration of the two parties' rights and obligations, under the Florists Policy. Doc. #2. Florists subsequently filed an Amended Complaint, again seeking a declaration of the rights and obligations, under the Florists Policy. Doc. #18. In its Amended Complaint, Florists also added Federal, as a party Defendant, and asked the Court to determine

3

that the Federal Policies provide coverage to Ludy, which is primary to any deemed coverage by Florists, and, thus, entitling Florists to contribution and/or indemnification from Federal. Id. Florists eventually voluntarily dismissed its claims against Federal (Doc. #29), but not before Ludy asserted both a counterclaim against Florists and a cross-claim against Federal. Doc. #24. Ludy's counterclaim seeks a determination that Florists is obligated to pay Ludy's claims, under the Florists Policy, while Ludy's cross-claim seeks a ruling that Federal is obligated to pay Ludy's claims, under both Federal Policies and also asks the Court to determine that Federal breached its duty of good faith and fair dealing. Id.

Presently before the Court are a Motion to Strike Affidavit, a Motion to Dismiss and various Motions for Summary Judgment. Specifically, Federal has moved the Court to dismiss Ludy's cross-claim (Doc. #28), as well as to Strike the Affidavit of Stephan A. Scantland or, in the alternative, for leave to File a Surreply Brief (Doc. #43). Ludy has moved for partial summary judgment on its cross-claim against Federal (Doc. #36), Florists has moved for summary judgment against Ludy (Doc. #41) and Ludy has moved for summary judgment against Florists (Doc. #45). The Court will first address the motions pending between Florists and Ludy and will then turn to the motions pending between Federal and Ludy.

4

I.      MOTION TO STRIKE/FILE SURREPLY BRIEF[6]

Federal also moves the Court to strike the affidavit of Stephan A. Scantland (Doc. #42 Ex. #1) or, in the alternative, to file a surreply brief. Doc. #43.  In support of its motion to strike, Federal cites Local Rule 7.2(d), which provides as follows:  "When proof of facts not already of record is necessary to support or oppose a motion, all evidence then available shall be discussed in, and submitted no later than, the primary memorandum of the party relying upon such evidence." S.D. Ohio R. 7.2(d) (2006).  Federal asserts that the affidavit should be stricken, because it was not submitted with the requisite memorandum of record.

Courts have noted that the purpose of Rule 7.2(d) is to "prevent the moving party from springing new facts on the nonmoving party when it is too late to contest them." Owner-Operator Indep. Drivers Ass'n v. Arctic Express, Inc., 288 F. Supp. 2d 895, 903 (S.D. Ohio 2003) (interpreting both Federal Rule of Procedure 6 and the predecessor to Local Rule 7.2(d)) (citing Peters v. Lincoln Elec. Co., 285

---

[6]Defendant Federal has offered to the Court its Surreply Brief, which is to be filed forthwith; the Court has considered the same in ruling herein.

F.3d 456, 476 (6th Cir. 2002)). If a party is not harmed by the filing of evidence outside of the time frame established by Rule 7.2(d), a Court should not strike the evidence. Ferron v. VC E-Commerce Solutions, Inc., 2007 U.S. Dist. LEXIS 6177 (S.D. Ohio Jan. 29, 2007) (refusing to strike evidence since there was "no issue here with a harmful violation of the local rules . . . because any piecemeal filing has not actually prejudiced Plaintiff").

In this case, while Ludy has not timely filed the subject affidavit, Federal will have suffered no harm, if the Court sustains its alternative motion to file a surreply brief. Thus, the Court OVERRULES Federal's Motion to Strike the Affidavit of Stephan A. Scantland, but SUSTAINS Federal's alternative Motion for Leave to File a Surreply Brief. Doc. #42 Ex. #1 (Scantland Aff.); Doc. #43 (Motion to Strike/File Surreply Brief) (attaching Surreply Brief, as Attachment #1).


II.    FACTS

In 1996, Ludy entered into a Client Payroll Processing Agreement, with Payroll Data. Doc. #24 (Ludy Am. Ans.) at 3, ¶ 16. Pursuant to this agreement, Payroll Data prepared and filed Ludy's Forms 941 ("Employer's Quarterly Federal Tax Return"), with the IRS, and also remitted the attendant payments. Id. ¶ 17. The payments included those required by the Federal Insurance Contribution Act and Federal Unemployment Tax Act, as well as Federal, State and local income taxes. Doc. #42 Ex. #1 (Scantland Aff.) ¶4.

As part of this process, Payroll Data prepared and submitted, for Ludy's

6

review, properly prepared Forms 941. Doc. #24 (Ludy Am. Ans.) at 4, ¶ 20. Ludy then deposited the required amount, to cover the related obligations, into an account at a local banking institution, to which Payroll Data had access to pay the tax obligations. Id. ¶ 18. Rather than filing the properly prepared Forms and associated obligations with the IRS, however, Payroll Data submitted different Forms to the taxing authorities and paid different tax amounts, significantly understating and underpaying the amount of taxes due and keeping the rest.[7] Id. ¶¶ 20-21.

In 2003, the IRS notified Ludy of the irregularities in the preparation of its Forms 941 and payment of the accompanying tax obligations. Id. ¶¶ 19-21. Ultimately, Ludy had to pay the IRS a total of $425,430, for past taxes due and interest. Id. ¶ 24. It is this sum that Ludy is attempting to claim, under the subject insurance policies.


III.    MOTION TO DISMISS STANDARD

In considering a Rule 12(b)(6) motion to dismiss, a court should not dismiss a complaint "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957); Dillard v. Shelby County Bd. Of Educ., 76 F.3d 716, 724 (6th Cir. 1996). Further, courts must "construe the complaint

---

[7]It is unclear whether Ludy attempted to recoup this money from Payroll Data prior to initiating claims under the subject insurance policies.

liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." Dillard, 76 F.3d at 724 (quoting Cherie Gazette v. City of Pontiac, 41 F.3d 1061, 1064 (6th Cir. 1994)).

While the complaint need not specify every detail of a plaintiff's claim, it must give the defendant "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Gazette, 41 F.3d at 1064. While liberal, this standard of review does require more than the "bare assertion of legal conclusions and it must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. Hughes v. Sanders, 469 F.3d 475, 477 (6th Cir. 2006) (quotations omitted).


IV.    SUMMARY JUDGMENT STANDARD

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The moving party,

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Id. at 323; see also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991). "Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary

8

to resolve the difference at trial." Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations, it is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." Mich. Prot. & Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©. Summary judgment shall be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. Anderson, 477 U.S. at 255. If the

9

parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998).

In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990); see also L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n.7 (5th Cir. 1992), cert. denied, 506 U.S. 832 (1992) ("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment . . . ."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

V.    DISCUSSION

"It is axiomatic that an insurer may maintain a declaratory judgment action to determine its rights and obligations under a contract of insurance.  A liability

10

insurer's obligation to its insured arises only if the claim falls within the scope of coverage." Cincinnati Indem. Co. v. Martin, 85 Ohio St. 3d 604, 605, 710 N.E.2d 677 (1999) (citation omitted).

The parties agree that the insurance Policies at issue are governed by Ohio law. In Ohio, insurance policies are generally interpreted by applying rules of construction and interpretation applicable to basic contract law. City of Sharonville v. Am. Employers Ins. Co., 109 Ohio St. 3d 186, 187, 846 N.E.2d 833 (2006). "Language in a contract of insurance reasonably susceptible of more than one meaning will be construed liberally in favor of the insured and strictly against the insurer." Faruque v. Provident Life & Accident Ins. Co., 31 Ohio St. 3d 34, 508 N.E.2d 949, syl. ¶ 1 (1987). It should be emphasized, however, that provisions are to be strictly construed against the insurer only when they are ambiguous. GenCorp, Inc. v. Am. Intern. Underwriters, 178 F.3d 804, 818 (6th Cir. 1999). "Moreover, the general rule of liberal construction cannot be used to create an ambiguity where one does not exist. If the terms of a policy are clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning." Monticello Ins. Co. v. Hale, 284 F. Supp. 2d 898, 901 (S.D. Ohio 2003) (citations omitted). As to exclusionary language in insurance policies, such language must be clear and specific and "a general presumption arises to the effect that that which is not clearly excluded from the operation of such contract is included in the operation thereof." King v. Nationwide Ins. Co., 35 Ohio St. 3d 208, 214, 519 N.E.2d 1380, 1386 (1988).

11

In sum, therefore, the Court's job is to first determine if the insurance policy terms in question are ambiguous, recognizing that any stated exclusions must be clear and specific.  If the terms are clear and unambiguous, the Court must enforce the policy as written, giving words used their plain and ordinary meaning.  If the policy terms are ambiguous, however, the Court must construe the ambiguity liberally in favor of the insured and strictly against the insurer.

A.    Florists Policy

The Court must determine whether there is a genuine issue of material fact as to whether Ludy's claims are covered, by the terms of six different coverage provisions in the Florists Policy, to wit:  (1) Employee Benefits Liability, (2) Money and Securities, (3) Legal Liability, (4) Employee Dishonesty, (5) Counterfeit Money, Forgery and Alteration, and (6) Commercial General Liability.

1.    Employee Benefits Liability ("EBL") Coverage

a.    EBL Policy Terms

The basic coverage provision contained in the Florists Policy's EBL coverage form reads as follows:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of any <u>negligent act, error or omission</u> of the insured, <u>or of any other person for whose acts the insured is legally liable</u>.  The negligent act, error or omission must be committed in the "<u>administration</u>" of your "<u>employee benefit program</u>."

Doc. #2 Attach. #13 (Florists Policy) at L-D1 (1/98) § I, ¶ 1a (emphasis added).

12

The definitional section of the EBL form provides, in pertinent part, as follows:

> "Administration" means . . . [h]andling records in connection with the "employee benefit program."

> "Employee benefit program" means group life insurance, group accident or health insurance, profit sharing plans, pension plans and stock subscription plans, provided that no one other than an employee may subscribe to such insurance or plans; unemployment insurance, <u>social security benefits</u>, workers' compensation and disability benefits; and any other similar plan[s] designated in the Declaration or added thereto by endorsement.[8]

<u>Id.</u> §VII (emphasis added).  Finally, the "Exclusions" provision of the EBL coverage

form provides that insurance coverage does not apply to the following:

> a. Loss arising out of any dishonest, fraudulent, criminal or malicious act or omission committed by any insured . . .

> d. Loss arising out of an insufficiency of funds to meet any obligations under any plan included in the "employee benefit program" . . .

> f. Loss arising out of your failure to comply with the mandatory provision of any law concerning workers' compensation, unemployment insurance, social security or disability benefits . . .

> i. Taxes, fines or penalties, including those imposed under the Internal Revenue Code or any similar state of local law; or loss or damages arising out of the imposition of such taxes, fines or penalties.

<u>Id.</u> §I, ¶ 2.

---

[8]There are no plans designated in the Declaration or added thereto by endorsement.

13

b.  Parties' Contentions

In general, Florists asserts that its EBL coverage insures against acts, errors or omissions that are negligent, rather than intentional, such as Payroll Data's conduct in the present case. Doc. #41 (Florists Mem. Supp.) at 4-6.  Further, Florists argues that Ludy has not established that its own conduct (as opposed to Payroll Data's conduct) amounted to negligence and, nevertheless, a party cannot establish negligence by demonstrating a breach of a "duty" it owes to itself. Id. at 6; Doc. #47 (Florists Reply Mem.) at 2-5.  Also, Florists suggests that, in applying the definitional section, the acts in question were not committed in the "administration" of a program (since Ludy hired Payroll Data to "handle records," rather than handling the records itself) and, specifically, the acts were not committed in the administration of an "employee benefit program" (since income taxes are not listed as employee benefits and part of the payments in question were comprised of such taxes). Doc. #41 (Florists Mem. Supp.) at 5-8; Doc. #47 (Florists Reply Mem.) at 6.

In applying the exclusionary policy language, Florists goes on to contend that the situation here clearly "arose out of" the IRS's failure to receive the funds in question, thereby triggering the "losses arising out of insufficiency of funds" exclusion. Doc. #47 (Florists Reply Mem.) at 7.  Also, Florists maintains that the language excluding losses "arising out of a failure to comply with mandatory provisions of any law concerning worker's compensation, unemployment insurance, social security or disability benefits" applies, since Ludy's loss arose out of its

14

failure to properly submit payroll taxes. Id.  Florists' final argument is that the exclusion pertaining to losses "arising out of the imposition of taxes" is also applicable, given that Ludy's loss was entirely related to its tax obligations. Doc. #41 (Florists Mem. Supp.) at 9.

In response, Ludy asserts that its negligence in failing to appropriately monitor Payroll Data is sufficient to trigger the basic coverage provisions in the EBL coverage form, relying on an affidavit from one of its owners and officers to support its negligence claim. Doc. #45 (Ludy Mem. Opp'n) at 2-6 (citing Doc. #42 Ex. #1 (Scantland Aff.)).  As to Florists' argument that Ludy could not have breached a duty to itself, Ludy offers case law, which indicates that the IRS was the innocent third party that sustained the loss in this case, suggesting that Ludy's duty was to the IRS rather than to itself. Doc. #48 (Ludy's Mem. Supp.) at 2-3 (citing Benilde-St. Margaret's High School v. St. Paul Mercy Ins. Co., 575 N.W.2d 127 (Minn. Ct. App. 1998)).

As to the definitional section arguments, Ludy asserts that the word "administration" includes "handling of records," which is broad and inclusive and should be interpreted in its favor. Doc. #45 (Ludy Mem. Opp'n) at 6-7.  Also, simply because Payroll Data was retained to carry out transactions on Ludy's behalf does not mean Ludy relinquished the right or duty to monitor the handling of its records. Doc. #48 (Ludy's Mem. Supp.) at 3-4.  As to the term "employee benefit program," the policy plainly includes "unemployment insurance, social security benefits and workers compensation benefits," some of which are at issue in this

15

case. Doc. #45 (Ludy Mem. Opp'n) at 7.

In addressing Florists' arguments pertaining to the exclusionary language, Ludy asserts that the undisputed facts indicate that its claim is not a result of an insufficiency of funds, but rather is the result of negligence in its efforts to properly administer its employee benefit plans. Id. at 7-8; Doc. #48 (Ludy's Mem. Supp.) at 5-6. As to the "failure to comply with the law" exclusion, Ludy argues that it did not attempt to evade its tax liability, but rather made a good faith effort to pay. Doc. #45 (Ludy's Mem. Opp'n) at 8-9; Doc. #48 (Ludy's Mem. Supp.) at 6. Finally, in response to Florists' tax exclusion argument, Ludy first points out that the Policy does not define the term "taxes." Doc. #45 (Ludy's Mem. Opp'n) at 9. Ludy then asserts that its losses here (the damages sought by the IRS) are not "taxes" since it already paid its taxes, albeit negligently, to Payroll Data. Id. at 9-10. Thus, the loss Ludy seeks coverage for is as a result of Payroll Data's theft, rather than Ludy's non-payment of taxes. Id. Ludy also argues that the portion of the misappropriated funds attributable to social security payments clearly falls outside the Policy's "taxes" exclusion. Id. at 10.

c.    Analysis

In interpreting the EBL Policy language, the Court must first resolve the following questions: (1) whether Ludy or "any other person for whose acts [Ludy] is legally liable" committed a "negligent act, error or omission," and if so, (2) whether the act, error or omission was committed in the "administration" of a

program, and if so, (3) whether the administered program was an "employee benefit program."  If the Court finds affirmative answers to all three questions, it must then determine whether Ludy's claim is clearly excluded from the operation of the Florists Policy, by the exclusionary conditions therein. King v. Nationwide Ins. Co., 35 Ohio St. 3d 208, 214, 519 N.E.2d 1380 (1988).

The Court initially makes a general finding that Ludy sustained its losses, at least in part, as a result of Payroll Data's wrongful appropriation of its funds.[9] Moving forward from that basis, the Court determines that Payroll Data is a "person for whose acts Ludy is legally liable," as demonstrated by the fact that the IRS held Ludy liable for the payment of the funds Payroll Data misappropriated. Further, Payroll Data committed an "error or omission" sufficient to satisfy the terms of the Policy requiring a "negligent act, error or omission . . . of any . . . person for whose acts the insured is legally liable."  Although Payroll Data's actions were admittedly intentional and possibly even criminal, rather than negligent, the Policy terms in question do not require negligence, in every event.  This is evidenced by the language that excludes from coverage losses arising out of "any dishonest, fraudulent, criminal or malicious act or omission committed by any insured," but significantly does not exclude those kinds of acts committed "by any other person for whose acts the insured is legally liable."

_____

[9]In so doing, the Court finds it unnecessary to address the question of whether Ludy's own conduct, which Ludy characterizes as being "negligence," also played a hand in its losses.

Because the focus is on Payroll Data's actions, rather than on Ludy's, it is clear that Payroll Data's misappropriation of funds occurred in the "administration" of a program, since it was indisputably "handling" tax-related "records" when it misfiled certain tax forms and misappropriated the attendant tax payments. Thus, the portion of the misappropriated funds that is attributable to "employee benefit programs" (social security monies, in this case)[10] is covered by the EBL Policy

_____

[10]As previously noted, according to the Florists Policy, "employee benefit programs" include,

> group life insurance, group accident or health insurance, profit sharing plans, pension plans and stock subscription plans, provided that no one other than an employee may subscribe to such insurance or plans; unemployment insurance, social security benefits, workers' compensation and disability benefits; and any other similar plan[s] designated in the Declaration or added thereto by endorsement.

Doc. #2 Attach. #13 (Florists Policy) at L-D1 (1/98), § VII (emphasis added). As will be more completely discussed later, see subparagraph B2a(iii) of Section V, infra, the social security monies in question are more properly referred to as "taxes," in general parlance. The "employee benefits" language in the Florists Policy, however, clouds this generally accepted definitional view. On this point, the Court finds the reasoning articulated by the court in Benilde-St. Margaret's High School v. St. Paul Mercy Ins. Co., 575 N.W.2d 127 (Minn. Ct. App. 1998) to be both persuasive and compelling.

One of the questions the Benilde court addressed was whether social security payments, such as the ones in question here, fell out of insurance coverage under a "taxes" policy exclusion. The court recognized that, although social security monies paid by an employer are generally classified as taxes, the inclusive policy language at issue there (which included "social security system benefits," as covered "employee benefits plans") forced the court's decision to declare such monies to not fall within the taxes exclusion and, instead, to fall within the coverage provisions of the plan in question. Id. at 129 (noting that an employer generally has no dealings with what would be generally thought of as "social security benefits," while all employers are required by law to collect what would be generally thought of as "social security taxes," which is presumably what the contract was intended to cover). Given that the Florists Policy language here is

18

provisions, unless specifically omitted by the subsequent exclusionary language.

The first exclusion Florists asserts is applicable is one pertaining to "losses arising out of an insufficiency of funds." The facts of this case do not support Florists' contentions, however. The loss sustained by Ludy arose, at least in part, out of Payroll Data's misappropriation of the funds Ludy had transferred to it, rather than out of Ludy's insufficiency of funds, as the Policy exclusion plainly requires. Ludy clearly had sufficient funds, as demonstrated by its original transmission of proper funds to Payroll Data to pay its tax liabilities.

Likewise, the facts do not support Florists' argument that Ludy's claim is excluded because its loss "arose out of its failure to comply with certain provisions of the law." As previously stated, Ludy's loss arose, at least in part, out of Payroll Data's wrongful appropriation of its funds. While one of the results of this misappropriation was that Ludy did not comply with certain employer filing and remittance provisions of the law, Ludy's loss was not specifically and clearly occasioned by such failure to comply. Since Ludy's claim is not clearly excluded by this language, the Court is bound to interpret it in Ludy's favor, as not excluding coverage.

As to the "taxes" exclusion, the Court determines that this exclusion is inapplicable, because the EBL coverage only pertains to the portion of the

---

ambiguous as to whether the social security monies in this case fall within the definition of covered "employee benefit programs," the Court is bound to interpret the language in favor of the insured and, thus, determines that the monies in question are covered by the EBL provisions.

misappropriated funds that were allocable to "employee benefit programs," as defined by the Policy (i.e., social security payments) and also because the Policy's definition of "employee benefit programs" describes the plans therein not using the word "taxes" (e.g., "social security benefits" as opposed to "social security taxes").

Having found that the Florists' Policy's EBL form provides coverage for such of Ludy's losses as are attributable to its social security payments, the Court will now turn its attention to the other Policy provisions to determine if they provide coverage for the losses that are not attributable to such payments.

2.     Money and Securities Coverage

a.     Money and Securities Policy Terms

The basic coverage provision contained in the Florists Policy's Money and Securities coverage form reads as follows:

> We agree to pay YOU up to the Limit of Insurance shown on this Schedule of Coverage for the direct <u>physical loss</u> of YOUR MONEY and SECURITIES,[11] or for which YOU are legally liable, because of

---

[11]The Policy defines MONEY and SECURITIES as follows:

MONEY means currency, coins, bank notes and bullion.  MONEY also includes travelers checks, registered checks and money orders held for sale to the public.  MONEY does not include coverage for checks returned due to insufficient funds.

SECURITIES means negotiable and non-negotiable instruments or contract(s) representing obligations to pay MONEY or other PROPERTY.  You have the duty to show that instruments are

20

> actual destruction, disappearance, or a dishonest act.  This coverage
> applies if the direct physical loss occurs . . . [o]utside YOUR place of
> business, but within the COVERAGE TERRITORY, while in the
> possession of any person YOU authorize to have care and custody of
> MONEY and SECURITIES.

Doc. #2 Attach. #5 (Florists Policy) at BP-G (3/00), ¶ 8a (irregular capitalization in

original; underlined emphasis added).  In pertinent part, the "Exclusions" provision

of the Money and Securities coverage form provides that insurance coverage does

not apply,

> to loss due to any fraudulent, dishonest or criminal act by YOU, any of
> YOUR EMPLOYEE(S), partners, officers, directors, trustees, joint
> adventurers or <u>authorized representatives</u>, whether acting alone or in
> collusion with others; . . . .

Id. Attach. #7 at BP-G (3/00), ¶ 8c (irregular capitalization in original; underlined

emphasis added).

### b.  Parties' Contentions

Florists makes two arguments as to why it is not obligated to cover Ludy's

claims under the Money and Securities provision of the Policy.  First, it maintains

that Ludy's loss does not constitute a "physical loss." Doc. #41 (Florists Mem.

Supp.) at 9-11.  In support of this assertion, Florists suggests that there was no

---

> collectable at the time of loss.  SECURITIES shall also include postage,
> revenue and other stamps in current use, tokens and tickets, but not
> MONEY.  SECURITIES does not include checks returned for
> insufficient funds.

Doc. #2 Attach. #5 (Florists Policy) at BP-I (3/00), at 32, 34 (irregular capitalization
in original).

actual physical damage to the property in question, thereby the loss was "economic" rather than "physical." Id. (citing Sentience Studio, LLC v. Travelers Ins. Co., 2004 U.S. App. LEXIS 12354 (9th Cir. June 21, 2004) (rejecting insured's argument that film credits could suffer "direct physical loss," since such loss cannot occur to the "intangible") and Port Auth. v. Affiliated FM Ins. Co., 245 F. Supp. 2d 563 (D.N.J. 2001) (holding that asbestos-related losses to building are intangible or incorporeal and are, thus, excluded from insurance coverage)); Doc. #47 (Florists Reply Mem.) at 8 (pointing out that Port Auth. case relied on Couch on Insurance, § 148.46 (3ʳᵈ ed.), in noting that "the ordinary definition of [the term 'physical'] is widely held to exclude alleged losses that are intangible or incorporeal").

Florists also points out that the exclusionary language in the Money and Securities provision precludes coverage for losses that are due to "dishonest or criminal acts" by an insured's "authorized representative." Since Ludy has conceded that Payroll's acts were dishonest or criminal[12] and since Payroll Data was Ludy's "authorized representative," as evidenced by the two parties entering into a "client payroll processing agreement" pursuant to which Ludy gave Payroll

---

[12]In support of the assertion that Ludy has conceded that Payroll's acts were dishonest or criminal, Florists cites Ludy's Motion for Partial Summary Judgment against Federal (Doc. #36 at 9), wherein Ludy states, "[i]n fact, Ludy seeks coverage for a loss due to theft of company funds by its former payroll service, Payroll Data Company." Florists also points to a letter from Ludy to Florists, advising Florists of the initial claim, wherein Ludy describes the loss as being "due to theft of company funds" and as being as a result of a "criminal assault." Doc. #41 Ex. B (Ludy Ltr., Dec. 3, 2003).

Data the power to execute and file returns and deposits on behalf of Ludy, Florists

argues that the exclusionary language clearly applies. Doc. #41 (Florists Mem.

Supp.) at 11-12; Doc. #47 (Florists Reply Mem.) at 9.

In response to Florists' argument about whether a "physical loss" occurred,

Ludy points out that the Policy does not define that term, thereby defying Florists'

contention that "actual physical damage to covered property is required." Doc. #45

(Ludy Mem. Opp'n) at 11. Ludy further cites case and statutory law, which it

suggests indicates that money is "tangible or physical property." Id. at 13-14

(citing Security State Bank v. Aetna Casualty & Sur. Co., 825 F. Supp. 944 (D.

Kan. 1993))[13]; Doc. #48 (Ludy's Mem. Supp.) at 7-8. Finally, Ludy maintains that

---

[13]None of the law cited by Ludy is supportive of its contention here. In
Security State Bank v. Aetna Casualty & Sur. Co., the District Court determined, in
accordance with the terms of the insurance policy at issue in that case, that
property "must be capable of being destroyed" in order to constitute "tangible
property." 825 F. Supp. 944, 948 (D. Kan. 1993). Thus, the Court held that while
cash is "tangible property," the checks (or credit instruments) at issue in that case
were not. Id. In arriving at this decision, the Court relied on the policy's definition
of the term "property damage," as "physical injury to or destruction of tangible
property . . . or loss of use of tangible property which has not been physically
injured . . . ." Id. at 947.

Ludy also cites 18 U.S.C. § 3663A(c)(1) and United States v. Andrews,
2004 U.S. App. LEXIS 3949 (6th Cir. Feb. 27, 2004), in support of its assertion
that,"[t]raditionally, offenses against tangible property have been defined so as to
include a theft of money." Doc. #45 (Ludy Mem. Opp'n) at 14. The Court finds
that neither of these authorities supports Ludy's contention. Section 3663A of 18
U.S.C. governs mandatory restitution to victims of certain crimes. Subparagraph
(c)(1) of that Section includes, as one of the classes of offenses that triggers the
mandatory restitution provisions, "an offense against property . . . in which an
identifiable victim or victims has suffered a physical injury or pecuniary loss."18
U.S.C. § 3663A(c)(1) (emphasis added). Thus, the plain meaning of this statute
does not define "offenses against tangible property" to include a "theft of money,"
as suggested by Ludy, but rather implies that victims of offenses against property

23

the case law relied on by Florists (suggesting that since there was no actual physical damage to the property in question, the loss was "economic" rather than "physical") is inapposite because, in this case, there has been an actual physical conversion of Ludy's assets, as opposed to a mere depreciation of property that it continues to possess. Doc. #48 (Ludy's Mem. Supp.) at 7-8.

As to Florists' contention that the "authorized representative" exclusion applies here, Ludy notes that the Policy does not define the term "authorized representative" to include an independent contractor. Doc. #45 (Ludy Mem. Opp'n) at 12. In fact, the Policy does not define the term at all. Id. Further, it is clear that the other individuals listed in this exclusion provision (i.e., the insured and the insured's employees, partners, officers, directors, trustees and joint adventurers) are all either part of the insured's company or directly involved in the transaction of the insured's primary business. Id. Therefore, including independent third parties in this exclusion would be inconsistent with the Court's obligation to interpret this provision as a whole. Id. Ludy further maintains that there is no case law supporting Florists' suggested interpretation that an independent contractor is an authorized representative. Doc. #48 (Ludy Mem. Opp'n) at 8.

---

(tangible or intangible) may have suffered loss in the form of either physical injury or pecuniary loss. In United States v. Andrews, the Court determined that the defendant's conduct (submitting materially false statements overstating his employee's hourly wages to the United States Department of Labor) fell within the parameters of 18 U.S.C. § 3663A(c)(1), because it resulted in a "financial loss" to his employees. 2004 U.S. App. LEXIS 3949, at *11. The Court, however, in no manner tied together the terms "tangible or physical property" and "theft of money."

c.    Analysis

The Court must decide whether Ludy sustained a direct "physical loss" of its money and securities and, if so, whether coverage is nevertheless excluded because the loss was due to a fraudulent, dishonest or criminal act by Ludy's "authorized representative."  In so doing, the Court must first determine whether the Policy language is ambiguous and, if not, apply it as written. Monticello Ins. Co. v. Hale, 284 F. Supp. 2d 898, 901 (S.D. Ohio 2003).  If the language is ambiguous, however, the Court must construe it strictly against Florists. GenCorp, Inc. v. American Intern. Underwriters, 178 F.3d 804, 818 (6th Cir. 1999).  Further, the exclusionary language in the Policy must be clear and specific, otherwise "that which is not clearly excluded from the operation of such contract is included in the operation thereof." King v. Nationwide Ins. Co., 35 Ohio St. 3d 208, 214, 519 N.E.2d 1380 (1988).

An analysis of the Policy language indicates that the Court's determination of whether Ludy sustained a direct physical loss of its property is unnecessary, because Ludy's claim is clearly and specifically excluded by the "authorized representative" provision, which precludes coverage for losses due to fraudulent, dishonest or criminal acts by Ludy's authorized representatives.  As to whether Payroll Data committed a "fraudulent, dishonest or criminal act," there is no dispute.  Florists acknowledges this fact, not only in its Complaint, but in its subsequently filed memoranda. E.g., Doc. #18 (Am. Compl.) ¶¶19-20; Doc. #41

25

(Florists Mem. Supp.) at 2 (citing Ludy's Answer and Ludy's Motion for Summary
Judgment).

The Court is then left with a question as to whether Payroll Data was Ludy's
"authorized representative," as that term is used in the Policy.  Ludy presents
evidence that establishes that the agreement it entered into with Payroll Data gave
Payroll Data "the power to execute and file on behalf of Ludy returns and deposits
pursuant to the Federal Insurance Contribution Act, Federal Unemployment Tax
Act, Federal Income Tax and Payroll taxes of state, counties and cities." Doc. #42
Ex. #1 (Scantland Aff.) ¶ 4.  As such, Ludy clearly authorized Payroll Data to serve
as its representative, in filing the forms and payments at issue.  Ludy does not
argue so much that Payroll Data was not "an" authorized representative, but rather
that Payroll Data was not the type of authorized representative contemplated by
the Policy exclusions, since the relationship between Ludy and Payroll Data was far
different than the relationship Ludy would have enjoyed with the other positions
listed in the exclusionary provision at issue (*e.g.*, employees, partners, officers).

The Court has found two cases from outside Ohio (and the Sixth Circuit)
with strikingly similar facts and issues, as the present case. Stanford Univ. Hosp. v.
Federal Ins. Co., 174 F.3d 1077 (9th Cir. 1999); Stop & Shop Cos. v. Federal Ins.
Co., 136 F.3d 71 (1st Cir. 1998).  In both cases, the Appellate Courts had to
decide whether the insured was precluded from recovering insurance proceeds

26

under an "authorized representative" provision similar to the one in this litigation.[14]

In each case, the insured had entered into a payroll tax service agreement with a

third party requiring the third party to make tax payments on behalf of the insured.

Stanford, 174 F.3d at 1079-80; Stop & Shop, 136 F.3d at 72.  Further, as in the

present case, the third party misappropriated some portion of the intended tax

funds, precipitating the insured's claim.  Stanford, 174 F.3d at 1080-81; Stop &

Shop, 136 F.3d at 72.

Based on a study of the plain meaning of the exclusionary term "authorized

representative," both Courts determined that the insureds were precluded from

recovering, under their respective policies.  In coming to its decision, the First

Circuit used Black's Law Dictionary and Webster's Third New International

Dictionary to define the relevant term to mean "either a person or company

---

[14]The "authorized representative" exclusion at issue in Stanford read as
follows:

> Coverage under [the premises and transit insuring clauses] does not
> apply to loss or damage: . . . due to Theft or any other fraudulent,
> dishonest or criminal act . . . by any Employee, Director, trustee or
> authorized representative of the Insured whether acting alone or in
> collusion with others . . . .

Stanford, 174 F.3d at 1082.  The Stop & Shop exclusion similarly excluded
coverage for losses due to,

> the theft or any other fraudulent, dishonest or criminal act . . . by any
> employee, director, trustee or authorized representative of the Insured
> whether acting alone or in collusion with others.

Stop & Shop, 136 F.3d at 72.

27

empowered to act on an entity's behalf." <u>Stop & Shop</u>, 136 F.3d at 74.  In

<u>Stanford</u>, the Ninth Circuit relied on the First Circuit's holding in <u>Stop & Shop</u>, in

stating:

> This court agrees with the First Circuit's ruling that the plain meaning of the "authorized representative" language in the . . . policies is not ambiguous and covers those who by authorization of the insured are given access to and permitted to handle the insured's funds.  No other interpretation would make sense in terms of the . . . policy.  The "authorized representative" provision excludes coverage for misappropriation of funds by those individuals or entities authorized by the insured to have access to the funds - in essence, those whom the insured empowers to act on its behalf.

<u>Stanford</u>, 174 F.3d at 1085 (citing <u>Stop & Shop</u>, 136 F.3d 71).  This Court finds

persuasive and agrees with the First and Ninth Circuit's determinations.  In the

absence of a definition of the term "authorized representative," in the present

policy, the Court turns to that term's dictionary meaning and concludes that the

term "covers those who by authorization of the insured are given access to and

permitted to handle the insured's funds," to include Payroll Data.  Thus, the

unambiguous language of the exclusion provision precludes Ludy from collecting

under the Money and Securities provision of the Florists Policy.

3.  <u>Legal Liability Coverage</u>

a.  <u>Legal Liability Policy Terms</u>

The basic coverage provision contained in the Florists Policy's Legal Liability

coverage form reads as follows:

We will pay those sums that you become legally obligated to pay as

28

> damages because of direct <u>physical loss or damage</u>, including loss of
> use to Covered Property caused by accident and arising out of any
> Covered Cause of Loss.

Doc. #2 Attach. #10 (Florists Policy) at CP 00 40 06 95, ¶ A (emphasis added).

The definitional section of the EBL form provides, in pertinent part, as follows:

> "Covered Property," as used in this Coverage Form, means tangible
> property of others in your care, custody or control that is described in
> the Declarations or on the Legal Liability Coverage Schedule.

> "Covered Causes of Loss:" see applicable Causes of Loss Form as
> shown in the Declarations.

<u>Id.</u> ¶ A1-A2.


b.    <u>Parties' Contentions</u>

Florists argues that its Policy does not cover Ludy's claim for the following

reasons:  (1) there was no direct physical loss or damage to the property in

question, but rather only economic harm,[15] (2) this claim does not pertain to

"Covered Property," since the property was neither "tangible," "property of others"

nor "described in the Declaration or on the Legal Liability Schedule," (3) the loss

was not caused by an accident, and (4) the loss did not arise out of any "Covered

Cause of Loss" (since it was not identified on the Causes of Loss Form). Doc. #41

at 12-14; Doc. #47 at 9-12.

In response, Ludy asserts the following: (1) it suffered a direct physical loss

(theft of money), which was more than a mere depreciation in value or some

---

[15]<u>See</u> Florists argument, *supra,* subparagraph A2b of this Section V.

nebulous economic harm, (2) traditionally offenses against tangible property have been defined to include theft of money, (3) whether the loss was an "accident" is determined by the intent of the insured and Ludy did not intend to sustain the loss of its property, thus, the loss occurred as result of an accident on Ludy's part, and (4) the contract should be strictly construed against Florists since it failed to identify any covered causes of loss on the Causes of Loss Form. Doc. #45 (Ludy's Mem. Opp'n) at 13-15; Doc. #48 (Ludy's Mem. Supp.) at 8-10.

c.   Analysis

The basic requirement for coverage under the Legal Liability form is that the insured sustain a loss as a result of "direct physical loss or damage."  Neither party points to case law that either supports or contradicts the proposition that funds deposited into a bank account, such as the ones in the present case, are capable of sustaining "direct physical loss or damage."  The definition of "physical," as provided in the Oxford English Dictionary, is "[o]f or relating to natural phenomena perceived through the senses (as opposed to the mind); of or relating to matter or the material world; natural; tangible, concrete." Oxford English Dictionary, http://dictionary.oed.com.  Ohio courts have recognized that "[m]oney deposited in a fund is intangible property," Walther v. Central Trust Co., N.A., 70 Ohio App. 3d 26, 32 (Ohio Ct. App. 1990), and that "[i]ntangible personal property, by its very nature, is not capable of being physically possessed." Denezza v. Denezza, 1996 Ohio App. LEXIS 935, at *5 (Ct. App. Mar. 15, 1996) (citation omitted)

30

(recognizing limited partnership interest as intangible personal property); see also

Falck v. United States, 2005 U.S. Dist. LEXIS 24183 (N.D. Ohio Oct. 19, 2005)

(recognizing that property not subject to physical seizure, such as mutual fund

shares, are intangible property).[16]  Accordingly, funds deposited into a bank

_____

[16]See also First Investors Corp. v. Citizens Bank, Inc., 1992 U.S. App. LEXIS 2910 (4th Cir.  Feb. 28, 1992), aff'g First Investors Corp. v. Citizens Bank, Inc., 757 F. Supp. 687 (W.D.N.C. 1991).  In First Investors, the plaintiff was a financial services organization that was in the business of selling shares of mutual funds. 757 F. Supp. at 688.  One of its employees offered for sale a contrived mutual fund, and then deposited and withdrew the proceeds from the sale of this fund into "business accounts" with the defendant bank. Id.  The plaintiff financial services organization sued the defendant bank for conversion of funds, based on the bank's conduct in allowing the employee to open accounts without corporate resolution and to endorse checks made payable to the financial services company, without authorization. Id.  The court initially determined that the plaintiff's complaint was properly grounded in conversion. Id. at 689.

One of the issues facing the First Investors Court was whether the cause of action was barred by the statute of limitations.  In addressing that question, the Court had to determine whether the period for instituting the cause of action commenced upon the happening of the acts in question or upon the plaintiff's discovery of the acts.  In making that determination, the Court had to decide whether a certain provision of the North Carolina Code applied, which required a determination of whether the loss there constituted "physical damage to property." Id. at 690 (statute providing that causes of action for physical damage to property shall not occur until physical damage to the property becomes reasonably apparent).  The District Court eventually concluded that the conversion of funds did not constitute "physical damage to property," based on the plain meaning of that phrase.

> The North Carolina courts have clearly not expanded the meaning of "physical damage to property" beyond the traditional meaning of the phrase.  Its application has been limited to cases wherein latent damages have been discovered in the form of personal injuries or physical damage to property. . . . [T]he Court is of the opinion that "physical damage," within the context of N.C.Gen.Stat. § 1-52(16), was meant to be literally interpreted.

Id. at 691.  The Fourth Circuit affirmed, noting that it "[knows] of no authority

31

account do not have a "physical" existence and, thus, are not susceptible to physical loss or damage.  Based on these considerations, the Court determines that the funds in question are intangible property, not susceptible to "physical loss or damage."  Thus, the basic coverage provision of the Legal Liability section does not cover the loss in question.

    4.    Employee Dishonesty Coverage

        a.    Employee Dishonesty Policy Terms

The basic coverage provision contained in the Florists Policy's Employee Dishonesty coverage form reads as follows:

    a.    WE will pay for direct loss of or damage to Business PERSONAL PROPERTY, including MONEY and SECURITIES, resulting from dishonest acts committed by any of YOUR EMPLOYEES acting alone or in collusion with other persons (except YOU or YOUR partner) . . . .

    b.    WE will pay for direct loss of or damage to Business PERSONAL PROPERTY, excluding MONEY and SECURITIES, resulting from dishonest acts committed by any of YOUR independent contractors YOU appoint in writing to act in YOUR behalf.  Coverage applies only while the independent contractor is acting for YOU or is in possession of COVERED PROPERTY . . .

Doc. #2 Attach. #4 (Florists Policy) at BP-H3 IND (6/98) (irregular capitalization in original; underlined emphasis added).  The definitional section of the Employee Dishonesty form provides, in pertinent part, as follows:

    "Employee" [m]eans a natural person who is engaged in a service

_____

classifying conversion of commercial instruments as 'physical damage to . . . property.'" First Investors, 1992 U.S. App. LEXIS 2910, at *7.

usual to YOUR business operations.  YOU pay this person by salary, wages or commission and YOU have the exclusive right to direct this person in the performance of their service.  Any broker, factor, commission merchant, consignee, contractor, or other agent or representative is not an EMPLOYEE.

Id. Attach #10 at BP-I (3/00) (irregular capitalization in original).

b.    Parties' Contentions

Among other things, Florists argues that only paragraph "a" of the coverage provision is pertinent, since Ludy suffered a loss of Money or Securities. Doc. #41 (Florists Mem. Supp.) at 14-20; Doc. #47 (Florists Reply Mem.) at 12-14.  Florists follows this argument by suggesting that the coverage provided by that paragraph is, nevertheless, inapplicable since Payroll Data was not an "employee." Doc. #41 (Florists Mem. Supp.) at 14-20; Doc. #47 (Florists Reply Mem.) at 12-14.  In response, Ludy argues that although Payroll Data is admittedly not an employee, the entire Policy must be read consistently.  It would not be consistent to consider Payroll Data as being like an employee under some provisions (i.e., treating it as an "authorized representative," under the Money and Securities coverage provision), but not under this provision. Doc. #45 (Ludy Mem. Opp'n) at 15-17; Doc. #48 (Ludy's Mem. Supp.) at 10-11.[17]

_____

[17]Ludy also argues that the second part of the coverage provision (pertaining to dishonest acts committed by independent contractors and pertaining to business property that is not money or securities) is applicable, if the Court applies the provisions of the Policy consistently. Doc. #45 (Ludy Mem. Opp'n) at 17.  In support of this argument, Ludy states that "Florists argues that Ludy cannot obtain coverage because it did not lose 'money,' but rather sustained an 'economic loss.'

c.    <u>Analysis</u>

While it is true that the terms of the Policy should be interpreted as a whole, it is also true that the Court does not have the authority, under the general rules of contract construction, to create ambiguity where it does not otherwise exist.[18]  As this Court has previously stated, "[i]f the terms of a policy are clear and unambiguous, a court must enforce the contract as written, giving words used in the contract their plain and ordinary meaning." <u>Monticello Ins. Co. v. Hale</u>, 284 F. Supp. 2d 898, 901 (S.D. Ohio 2003) (citations omitted).  The plain language of paragraph "a" of the Employee Dishonesty provision simply does not apply, since the dishonest acts that caused Ludy's loss were not committed by one of its "employees."  The Court has no leeway in holding otherwise.  Thus, the Employee Dishonesty provision does not provide coverage for Ludy's claimed loss.

_____

Then, as here, it wants to make precisely the opposite argument, contending that coverage is excluded because money (i.e., that which Ludy lost) is not included in the definition of 'business personal property.'" <u>Id.</u>  In so stating, Ludy is apparently referring to Florists' argument under the Money and Securities provision.  Ludy has misstated Florists' argument, however.  Nowhere in Florists' memoranda does it argue that Ludy's loss does not pertain to "money" or "securities." <u>See</u> Doc. #41 (Florists Mem. Supp.) at 9-12.  Instead, Florists asserts that Ludy's loss does not constitute a "direct physical loss" since it was an economic loss, rather than a physical loss. <u>Id.</u>  The Court find that, since Ludy's loss pertained to "money or securities," paragraph "b" of the Employee Dishonesty provision does not apply.

[18]In so stating, the Court is not implying that it agrees with Ludy's contention that it would be inconsistent to consider Payroll Data as an "authorized representative," under the terms of the Money and Securities provision, while at the same time considering Payroll Data to not be an employee, under the terms of the Employee Dishonesty provision.

34

5.    <u>Counterfeit Money, Forgery and Alteration</u>

The basic coverage provision contained in the Florists Policy's Counterfeit

Money, Forgery and Alteration coverage form reads as follows:

> WE agree to pay . . . for loss resulting from forgery or alteration of any
> check, draft, promissory note, bill of exchange or similar written
> promise of payment in MONEY, that YOU or YOUR agent has issued .
> . .

Doc. #2 Attach. #5 (Florists Policy) at BP-G (3/00), ¶ 5 (irregular capitalization in

original).   Florists argues that Ludy has made no factual allegations demonstrating

"forgery or alteration of any draft, note or bill." Doc. #41 (Florists Mem. Supp.) at

18.  Ludy provides nothing in response. <u>See</u> Doc. #45 (Ludy Mem. Opp'n); Doc.

#48 (Ludy's Mem. Supp.).  Florists is, therefore, not required to provide coverage

under the Counterfeit Money, Forgery and Alteration provision of the Policy, since

Ludy presents no evidence that its loss resulted from "forgery or alteration of any

check, draft, promissory note, bill of exchange or similar written promise of

payment in money."


6.    <u>Commercial General Liability Coverage</u>

The basic coverage provision contained in the Florists Policy's Commercial

General Liability coverage form reads as follows:

> We will pay those sums that the insured becomes legally obligated to
> pay as damages because of "bodily injury" or "property damage" to
> which this insurance applies.

Doc. #2 Attach. #11 (Florists Policy) at CG 00 01 07 98, §I, ¶ 1.  The definitional

section of the EBL form provides, in pertinent part, as follows:

> "Property Damage" [means] loss of use of tangible property that is not physically injured.

Id. Attach. #13 § V, ¶ 17.]

Florists argues that Ludy's loss was not caused by "property damage" and, thus, the Commercial General Liability coverage provision is inapplicable.[19] Doc. #47 (Florists Reply Mem.) at 14-15.  Ludy, on the other hand, asserts that since it sustained a "loss of use of tangible property that is not physically injured," it sustained compensable "property damage." Doc. #45 (Ludy's Mem. Opp'n) at 17-18; Doc. #48 (Ludy's Mem. Supp.) at 11.

As previously determined, the loss in question involved funds deposited into a bank account, which were intangible property not susceptible of physical damage.[20]  Since Ludy did not sustain "property damage," meaning a "loss of use of tangible property," as defined by the Commercial General Liability provision, coverage under that provision is not warranted.

### 7.    Summary – Florists Policy Coverage

In sum, then, the Court holds that the EBL form provides coverage for such of Ludy's losses as are attributable to the payment of social security monies.  The

---

[19]Florists also argues that Ludy cannot raise this claim for the first time in its Motion for Summary Judgment. Doc. #47 (Florists Reply Mem.) at 14.  The Court finds it unnecessary to address this assertion, given its resolution of the issue of Commercial General Liability coverage in Florists' favor.

[20]See supra paragraph A3c of this Section V.

Court further determines that there is no genuine issue of material fact, as to

Ludy's inability to satisfy the following coverage provisions of the Florists Policy:

(1) Money and Securities, (2) Legal Liability Coverage, (3) Employee Dishonesty, (4)

Counterfeit Money, Forgery and Alteration, and (5) Commercial General Liability.

Thus, Florists' Motion for Summary Judgment (Doc. #41) is OVERRULED, as it

pertains to the Florists Policy's coverage of Ludy's losses that are attributable to

social security monies, under the EBL coverage provision, and SUSTAINED, as it

pertains to all other coverage provisions in the Florists Policy.  Conversely, Ludy's

Motion for Summary Judgment (Doc. #45) is SUSTAINED, as it pertains to the

Policy's coverage of Ludy's losses that are attributable to social security monies,

under the EBL coverage provision, and OVERRULED, as it pertains to all other

coverage provisions in the Florists Policy.


B.    Federal Policies[21]

    Federal has moved to dismiss Ludy's cross-claim (Doc. #28) and Ludy has

moved for partial summary judgment against Federal (Doc. #36).  Federal's Motion

to Dismiss covers all of Ludy's cross-claims, to wit:  (1) "a declaratory judgment

that Federal is obligated . . . to reimburse Ludy for all of its damages, losses and

---

[21]Although it has not presented evidence to suggest that it has standing to
do so, Florists has filed a brief in opposition to Federal's Motion to Dismiss Ludy's
cross-claim (Doc. #34) and a brief in response to Federal's opposition to Ludy's
motion for partial summary judgment (Doc. #40).  For purposes of resolution of the
claims at issues between Federal and Ludy, the Court will treat Florists' briefs as
*amicus* briefs.

costs incurred for losses sustained as are specifically recoverable under the

Policies," (2) a determination that Ludy is entitled to recover losses and damages

under the Federal Umbrella Policy, (3) a determination that Ludy is entitled to

recover losses and damages under the Federal ForeFront Policy, and (4) a

determination that Federal has breached its duty of good faith and fair dealing. Doc.

#24 (Ludy Cross-claim) at 14-19; Doc. #28 (Federal Mot. Dismiss).  Ludy moves

for partial summary judgment against Federal only on the issues of the ForeFront

Policy coverage and bad faith. Doc. #36 (Ludy Partial Summ. J. Mot.).


### 1.  Federal Umbrella Policy

The Federal Umbrella Policy features two separate insuring provisions,

Excess Follow Form liability coverage and Umbrella Liability coverage. Doc. #18

Attach. #4 (Umbrella Policy) at L0408.  Ludy's cross-claim seeks a determination

that Ludy is entitled to coverage, under the Excess Follow Form liability provision of

the Umbrella Policy. Doc. #24 (Ludy Cross-claim) at 18, ¶¶30-35.  This section

provides coverage over and above the limits of liability provided in certain

underlying insurance policies. Doc. #18 Attach. #4 (Umbrella Policy) at L0408.

The underlying insurance policy at issue here is the Florists Policy identified as

"Policy No. BP07437." Id. at L0406.  The limit of liability of the Florists Policy is

$1,000,000 for each "Occurrence."[22]  Id.  The limit of insurance provided by the

---

[22]The Policy defines "Occurrence," in pertinent part, to mean:  with respect
to bodily injury or property damage liability, an accident, including continuous or

Federal Umbrella Excess Follow Form is $5,000,000 for each "Occurrence." Id. at L0403.

Federal is liable to pay Ludy only that part of its covered loss "in excess of the total applicable limits of underlying insurance." Id. at L0409. If the underlying insurance does not cover a loss (for reasons unrelated to exhaustion of the limits of insurance), however, Federal is not liable to cover such loss either. Id. In sum, then, Federal is liable, for up to $5,000,000, to cover any losses that are covered by the Florists Policy and that are in excess of the $1,000,000 liability limit of the Florists Policy.

Federal moves to dismiss this portion of Ludy's cross-claim. Doc. #28 (Federal Mot. Dismiss) at 11-12. Specifically, Federal asserts that Ludy's cross-claim fails to state a claim upon which relief can be granted, because no coverage exists under the Umbrella provision until the entire $1,000,000 limit of liability of the primary underlying coverage policy (Florists Policy, Commercial General Liability provision) is exhausted, and Ludy's claim here is considerably less than the $1,000,000 liability limit.[23] Id.

Ludy, on the other hand, argues that no determination has been reached by this Court as to the applicability of amounts of coverage of underlying coverage

repeated expose to substantially the same general harmful conditions. . . . Doc. #28 (Federal Mot. Dismiss) at L0422.

[23]Ludy seeks coverage for its losses in the amount of $380,322, which represents the amount of the IRS obligation Ludy incurred as a result of Payroll Data's misappropriation of its funds, as well as interest in the amount of $45,108, for a total of $425,430. Doc. #24 (Ludy Am. Ans.) at 3, ¶ 24.

issued by Florists. Doc. #36 (Ludy Mem. Opp'n) at 12-13. Further, there are multiple sections of the Florists policies, under which Ludy is entitled to coverage, each of which has a separate liability limit (some of which are lower than the IRS claim). Id. Ludy also states that "[c]overage under Federal's Commercial Umbrella Policy is entirely dependent upon resolution of the issues related to the underlying Forefront Portfolio Policy.[24]" Doc. #42 (Ludy Reply Mem.) at 8-9.

As a preliminary matter, the Court must determine what portion or portions of the Florists Policy is considered to be the "underlying insurance," pursuant to Federal's Umbrella Policy. Federal takes the position that it is only the Commercial General Liability coverage provision that is the underlying insurance, while Ludy appears to be contending that all of the provisions of the Florists Policy should be considered as such. Doc. #36 (Ludy Mem. Opp'n) at 12[25]; Doc. #38 (Federal Reply Mem.) at 4-7. The Umbrella Policy's Schedule of Underlying Insurance, in pertinent part, identifies the underlying insurance as follows:

**Commercial General Liability**

| Name: | Florists' Mutual | $1,000,000 | Each Occurrence |
|-------|------------------|------------|-----------------|
|       | Insurance Co.    | $2,000,000 | General Aggregate |

------

[24]It is presumed that Ludy meant that coverage under the Umbrella Policy is entirely dependent upon resolution of the issues related to the underlying "Florists Policy," rather than the underlying "[Federal] Forefront Portfolio Policy."

[25]Specifically, Ludy's Memorandum in Opposition reads, "[t]here are multiple sections of the Florists' policies under which Ludy is entitled to coverage, each of which has a separate liability limit. Some of the limits of these sections are lower than the IRS' claim against Ludy and, therefore, would not provide full coverage to Ludy. In such a situation, Federal's Umbrella Policy would be triggered." Doc. #36 (Ludy Mem. Opp'n) at 12.

| | | | |
|---|---|---|---|
| Policy No. | BP07437[26] | | (other than Products |
| Term | 06/26/2001 | | Completed Operations) |
| to | 06/26/2002 | $2,000,000 | Products Completed |
| | | | Operations Aggregate |
| | | $1,000,000 | Personal and Advertising |
| | | | Injury |

Doc. #18 Attach. #4 (Umbrella Policy) at L0406.   In comparison, the limits of

liability provided under the Florists Policy's Commercial General Liability are as

follows:

| Commercial General Liability | Limits of Insurance |
|---|---|
| THIS POLICY IS SUBJECT TO AN AGGREGATE LIMIT | |
| Products/Completed Operations Aggregate | $2,000,000 |
| General Aggregate Limits (other than Products/Completed Operations) | $2,000,000 |
| | |
| COVERAGE A - | |
| Bodily Injury and Property Damage Liability (any one occurrence) | $1,000,000 |

. . .

| | |
|---|---|
| COVERAGE B - | |
| Personal and Advertising Injury Liability (any one person or organ.) | $1,000,000 |

. . . .

Doc. #2 Attach. #1 (Florists Policy) Addt. Decl.  Because the limits of liability

identified in Federal's Umbrella Policy, as pertaining to the "underlying insurance,"

so closely mirror the limits of liability provided by the Commercial General Liability

provision in the Florists Policy, the Court determines that the "underlying

insurance," upon which the Federal Umbrella Policy builds, is the Florists Policy's

Commercial General Liability coverage provision.

Thus, Federal is only liable, under the Umbrella Policy, to cover any losses

---

[26]Number BP07437 is the policy number for the Florists Policy, as a whole.
Doc. #18 Attach. #1 (Umbrella Policy) at 1.

that are covered by the Florists Policy's Commercial General Liability provisions and that are in excess of the $1,000,000 liability limit of the Florists Policy.  As previously determined, however, Ludy is not entitled to coverage under the Commercial General Liability provision.[27]  Therefore, no further coverage is provided by the Federal Umbrella Policy.  Since coverage is not warranted under Federal's Umbrella Policy, Federal's Motion to Dismiss Ludy's Cross-Claim (Doc. #28), as it pertains to the Federal Umbrella Policy, is SUSTAINED.


        2.    <u>Federal ForeFront Policy</u>

The Federal ForeFront Policy features three separate insuring provisions, to wit:  Directors and Officers ("D&O") Liability Coverage, Employment Practices Liability Coverage and Fiduciary Liability Coverage. Doc. #18 Attach. #1 (ForeFront Policy) at L0349.  Ludy's cross-claim seeks a declaration that it is entitled to coverage, under both the D&O section and the Fiduciary Liability section. Doc. #24 (Ludy Cross-claim) at 16-17, ¶¶19-29.

---

[27]<u>See</u>, *supra*, subparagraph A6 of this Section V.

a.  D&O Coverage

(i)  D&O Coverage Terms

The basic coverage provision contained in the ForeFront Policy's D&O

section reads as follows:

> [T]he Company shall pay <u>Loss</u> on behalf of [Ludy] resulting from any
> Insured Organization Claim first made against [Ludy] during the Policy
> Period . . . for <u>Wrongful Acts</u>.

Doc. #18 Attach. #1 (ForeFront Policy) at 19 (emphasis added).[28]  The definitional

section of the D&O section provides, in pertinent part, as follows:

> "Loss" means the total amount which any Insured becomes legally
> obligated to pay as a result of any Claim made against any Insured for
> Wrongful Acts, including, but not limited to, damages . . . judgments,
> settlements, pre-judgment and post-judgment interest and Defense
> Costs.  Loss does not include: . . . <u>taxes</u>, fines or penalties imposed by
> law . . . .
>
> "Wrongful Act" means:  any error, misstatement, misleading
> statement, act, omission, neglect, or breach of duty committed,
> attempted, or allegedly committed or attempted by . . . any Insured
> Organization[29]. . . ."

_____

[28]The D&O coverage section actually contains three similar coverage
provisions, with one pertaining to "individual non-indemnified liability coverage,"
one to "individual indemnified liability coverage" and one to "corporate liability
coverage."  <u>See</u> Doc. #18 Attach. #1 (ForeFront Policy; D&O section) at 19.  Both
Ludy and Federal cite the language of the "corporate liability coverage" clauses
(which is quoted in the text above) in their memoranda, as the applicable coverage
provision in this case, so the Court will assume that this is the applicable provision.
Doc. #28 (Federal Mem. Supp.) at 8; Doc. #42 (Ludy Mem. Supp.) at 2.  <u>But see</u>
Doc. #34 (Florists Brief) at 4-6 (citing all three coverage provisions of the Federal
D&O Policy).

[29]Both parties agree that Ludy is the "Insured Organization," in accordance
with the Policy terms.

43

Id. at 21-23 (emphasis added).


(ii)    Parties' Contentions

The parties' arguments center around two portions of the D&O coverage section - - whether Ludy sustained a "Loss" and whether Ludy committed a "Wrongful Act."  The arguments pertaining to the issue of "Loss" concern whether the "taxes" exclusion applies.

Ludy initially contends that the statutory exclusion language pertaining to taxes and whether it suffered a Loss must be construed strictly against the insurer. Doc. #42 (Ludy Reply Mem.) at 4-5.  Ludy also asserts that its claim is not for taxes, but rather for additional amounts owed due to Payroll Data's misappropriation, and that the cases cited by Federal, as to this point, are not applicable, since the parties seeking coverage there had never attempted to pay their tax liabilities. Id. at 5.  Finally, Ludy maintains that even if the Court finds that some money paid by Ludy is for "taxes," coverage still exists, since the misappropriated monies also included social security payments. Id. at 5-6 (citing Benilde-St. Margaret's High Sch. v. St. Paul Mercury Ins. Co., 575 N.W.2d 127, 130 (Minn. Ct. App. 1998) & Int'l Surplus Lines Ins. Co. v. Princehorn, 1994 Ohio App. LEXIS 2039 (Ct. App. May 11, 1994)).

Ludy further argues that its own negligence constitutes the requisite "Wrongful Act" and that the IRS's categorization of that conduct is irrelevant. Id. at 3.  As to Federal's argument that there is no Wrongful Act, because the IRS is

44

simply asking Ludy to do what it is legally obligated to do (pay taxes), Ludy

maintains that it is not seeking to have Federal pay its (Ludy's) taxes, but rather is

making a claim for the additional amounts it had to pay, as a result of Payroll

Data's misappropriation. Id. at 4.

Federal, on the other hand, argues that Ludy did not suffer a compensable

"Loss," because the D&O language excludes "taxes" from the definition of covered

Loss and courts routinely enforce such policy exclusions.[30] Doc. #28 (Federal Mot.

Dismiss) at 12-13 (citing Mortenson v. Nat'l Union Fire Ins. Co., 249 F.3d 667,

671-72 (7th Cir. 2001) & Hofco, Inc. v. Nat'l Union Fire Ins. Co., 482 N.W.2d 397,

400-01 (Iowa 1992)).  Federal also argues that the Benilde case is distinguishable

for two reasons.  First, because the policy in Benilde expressly covered social

---

[30]In its *amicus* brief, Florists argues that the Court should not find in
Federal's favor here, because whether Ludy incurred a "Loss" that resulted from an
"Insured Organization Claim" is a factual issue that cannot be resolved at this point
in the proceedings. Doc. #34 (Florists Brief) at 4-6 (citing Federal D&O basic
coverage language, which provides that Federal is required to pay for Losses
resulting from an "Insured Organization Claim").  In support of its argument, Florists
maintains that the focus here should be on whether Ludy's claim resulted from an
"Insured Organization Claim," rather than on whether Ludy sustained a Loss. Id.

Contrary to Florists' assertions, there seems to be no dispute that the loss
Ludy sustained was, at least in part, as a result of an "Insured Organization Claim,"
as that term is defined in the Policy. Doc. #18 Attach. #1 (Federal ForeFront Policy)
at 19.  Ludy's receipt from the IRS of a claim for the misappropriated funds
satisfies the requirement of an "Insured Organization Claim." See id.  Further,
neither party to the Policy in question (Federal or Ludy) argues that there was not
such a Claim or that the loss in question did not result from such a Claim.  Thus,
the Court determines that the loss in question resulted, at least in part, from an
Insured Organization Claim, as those terms are defined by the ForeFront D&O
Policy.  Thus, the question for resolution is whether such loss constitutes a "Loss,"
under the terms of the Policy.

security benefits, as opposed to the present plan that contains no such language, and also because Benilde stands alone for its novel proposition that coverage exists for monies an insured is required to pay the IRS, and that the majority view is that monies an insured is statutorily obligated to pay do not constitute covered loss under a policy. Doc. #38 (Federal Reply Mem.) at 8 (citing Pac. Ins. Co. v. Eaton Vance Mgmt., 369 F.3d 584 (1st Cir. 2004); May Dep't Stores Co. v. Fed. Ins. Co., 305 F.3d 597 (7th Cir. 2002); Oktibbeha County Sch. Dist. v. Coregis Ins. Co., 173 F. Supp. 2d 541 (N.D. Miss. 2001)).

Federal also maintains that Ludy does not satisfy the "Wrongful Act" requisite of the Policy, because "the IRS did not assert that Ludy had committed any Wrongful Act." Doc. #28 (Federal Mot. Dismiss) at 13. "Rather, the IRS simply required Ludy to comply with its pre-existing statutory obligation to pay its taxes." Id. (citing Oktibbeha County School Dist. v. Coregis Ins. Co., 173 F. Supp. 2d 541, 543 (N.D. Miss. 2001)).

(iii)    Analysis

The Court must initially determine whether Ludy sustained a Loss, in accordance with the terms of the D&O section terms. Critical to this decision is the determination of whether Ludy's loss is excepted out of the Policy by the "taxes" exclusionary language. Specifically, that language provides that "Loss does not include . . . taxes . . . ." Doc. #18 Attach. #1 (ForeFront Policy) at 21. Ludy describes its loss as being comprised of funds that were earmarked for the

46

payment of Federal, State and local income taxes, as well as required payments under the Federal Insurance Contribution Act and the Federal Unemployment Tax Act. Doc. #42 Ex. #1 (Scantland Aff.) ¶8.

Although the word "taxes" is not defined by the Policy, the Court must interpret that word given its ordinary meaning. Alexander v. Buckeye Pipeline Co., 53 Ohio St. 2d 241, 374 N.E.2d 146, syl. ¶ 2 (1978) ("Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument."). In general parlance, the word "taxes" would include the sums paid to the IRS or other taxing authorities for Federal, State and local income taxes, as well as Federal unemployment taxes. Case law on this point is scarce, but is in accord with the Court's determination that the amounts paid by Ludy to the IRS were "taxes" and, thus, excepted out of coverage by the specific exclusionary provision.[31] E.g., Mortenson v. Nat'l Union Fire Ins. Co., 249 F.3d 667, 671 (7th Cir. 2001) (excluding sums owed to the IRS, as a result of financial misconduct on part of company president, under policy's "fines and

_____

[31]While it is true that Ludy originally attempted to pay its taxes by remitting appropriate payments to Payroll Data, only to have a portion of said payments misappropriated by Payroll Data, this does not change the fact that the loss in question here was the amount Ludy had to pay to the taxing authorities, in order to cover its tax obligations. It is also inapposite that the Mortenson case, 249 F.3d 667 (7th Cir. 2001), concerned intentional misconduct in the non-payment of taxes. The Policy language in question, in this case, does not differentiate between whether the taxes were purposefully or mistakenly not paid, but simply excludes "taxes."

penalties" exclusionary language); see also Bd. of Trustees v. Aetna Cas. & Sur. Co., 1997 U.S. App. LEXIS 1310 (4th Cir. Dec. 5, 1997) (side-stepping issue of whether funds paid to IRS constituted "taxes or penalties," under insurance exclusion provision, and, instead, deciding case on alternative tort claim theory). Ludy further argues that even if the Court determines that the portion of the funds that Payroll Data misappropriated, which are attributable to income and unemployment taxes, are excluded from coverage, the social security monies that were misappropriated are not "taxes" and should, thus, not be excepted out of the Policy coverage.  Ludy relies on Benilde-St. Margaret's High Sch. v. St. Paul Mercury Ins. Co., 575 N.W.2d 127 (Minn. Ct. App. 1998) and Int'l Surplus Lines Ins. Co. v. Princehorn, 1994 Ohio App. LEXIS 2039 (Ct. App. May 4, 1994), in support of this contention.

The Court finds that neither the language of the D&O section, as it is applies to the facts here, nor the case law cited by Ludy lends support to Ludy's position regarding the non-tax character of the social security payments.[32]  The definition of "tax," as provided in the Oxford English Dictionary, is "a compulsory contribution

---

[32]The Court's decision here that the social security payments are "taxes," under the terms of the Federal D&O Policy, is not inconsistent with the earlier decision that the social security payments were not "taxes," under the terms of the Florists EBL Policy. See, *supra*, subparagraph A1c of this Section V.  As explained in the earlier discussion, the Florists EBL Policy provisions specifically included "social security benefits," in the terms of covered losses, which presented an ambiguity in the interpretation of that Policy's "taxes" exclusionary language (necessitating the Court's interpretation in favor of the insured).  There is no such inclusionary language in the Federal Policy.  Therefore, the Court must interpret the terms given their plain and ordinary meaning.

to the support of government, levied on persons, property, income, commodities, transactions, etc., now at fixed rates, mostly proportional to the amount on which the contribution is levied." Oxford English Dictionary, http://dictionary.oed.com. Common understanding of the Social Security system indicates that the payments thereunder are compulsory, in support of the government (in its role of guardian of the public welfare) and levied on persons.  Further, a perusal of the Social Security Administration's ("SSA's") web-site indicates that the SSA refers to the mandatory payments, under its system, as "taxes."[33] http://www.socialsecurity.gov. Similarly, a study of the IRS Form 941 (the Form under which Payroll Data misappropriated Ludy's payments) and its Instructions indicates that the payments in question are "taxes."[34]

As to the case law cited by Ludy, neither it, nor any other case the Court has been able to find, supports the contention that the social security monies in question should not be considered "taxes," pursuant to Federal's D&O coverage exclusion.  In Benilde-St. Margaret's High Sch. v. St. Paul Mercury Insurance Co., 575 N.W.2d 127 (Minn. Ct. App. 1998), the court interpreted an insurance policy

_____

[33]For example, the SSA indicates that the 2007 "social security tax rate" is 7.65% for employees and 15.30% for self-employed people. http://www.socialsecurity.gov.

[34]Form 941 is entitled "Employer's Quarterly Federal Tax Return." IRS Form 941, http://www.irs.gov/formspubs.  In explaining the purpose of that Form, the Instructions provide that each time an employer pays wages, the employer must withhold "certain amounts for federal income tax, social security tax, and Medicare tax [and that] Federal law also requires [the employer] to pay any liability for the employer's portion of social security and Medicare taxes." Inst. IRS Form 941 http://www.irs.gov/formspubs.

provision that covered losses resulting from an error committed in the administration of the insured's "employee benefits." Id. at 129.  Included in the list of what was considered an "employee benefit" was "social security system benefits." Id.  Similar to the present case, there was an exclusionary clause for "taxes." Id. at 131.  In determining that the social security monies were not taxes, for purposes of the exclusionary clause, the court relied on the policy language that specifically included "social security system benefits," as an "employee benefit." Id.[35]  The present case is distinguishable in that the base coverage provision does not specifically include social security payments in the coverage language.

In International Surplus Lines Insurance Co. v. Princehorn, 1994 Ohio App. LEXIS 2039 (Ct. App. May 4, 1994), another case relied on by Ludy, Ohio's Summit County Court of Appeals was faced with the question of whether an individual's failure to pay sales taxes is uninsurable, as a matter of public policy. The court determined that such failure was not uninsurable, as against public policy, when the liability does not arise from intentional conduct. Id. at *8. Although the International Surplus Court's holding would be instructive, if the question presented was whether the social security taxes are uninsurable as a matter of public policy, it does nothing to provide specific guidance as to the

---

[35]In so doing, the court recognized that "social security monies are frequently referred to as taxes," but was restrained from considering them as such, because the plain language of the policy made it clear that it intended to cover social security payments. Benilde-St. Margaret's High Sch. v. St. Paul Mercury Ins. Co., 575 N.W.2d 127, 131(Minn. Ct. App. 1998).

50

interpretation of the policy language in question here, which specifically excludes "taxes" from coverage.

Based on the Court's determination that the D&O Policy excepts "taxes" from its coverage provisions and that all portions of the sums that comprise Ludy's loss are "taxes," Ludy did not sustain a "Loss," under the terms of that Policy.  It is, therefore, unnecessary for the Court to address the question of whether Ludy committed a "Wrongful Act" and Federal's Motion to Dismiss Ludy's Cross-Claim (Doc. #28), as it pertains to the Federal ForeFront Policy D&O coverage section, is SUSTAINED.  Conversely, Ludy's Partial Motion for Summary Judgment (Doc. #36), on its cross-claim, as it pertains to the Federal ForeFront Policy D&O coverage section, is OVERRULED.

b.    <u>Fiduciary Liability Coverage</u>

(i)    <u>Fiduciary Liability Coverage Terms</u>

The basic coverage provision contained in the ForeFront Policy's Fiduciary Liability coverage section reads as follows:

> The Company shall pay <u>Loss</u> on behalf of the Insured resulting from any Fiduciary Claim first made against such Insured during the Policy Period, or any applicable Extended Reporting Period, for Wrongful Acts by the Insureds or by any person for whose <u>Wrongful Acts</u> the Insureds are legally responsible.

Doc. #18 Attach. #1 (ForeFront Policy) at 37 (emphasis added).  The definitional section of the Fiduciary Liability section provides, in pertinent part, as follows:

> "Loss" means the total amount which any Insured becomes legally

51

obligated to pay as a result of any Claim made against any Insured for Wrongful Acts, including, but not limited to, damages . . . judgments, settlements, pre-judgment and post-judgment interest, Settlement Fees and Defense Costs. Loss does not include . . . <u>taxes</u>, fines or penalties imposed by law . . . .

"Plan" means (1) any Sponsored Plan; and (2) any government-mandated insurance for workers compensation, unemployment, social security or disability benefits for Employees.

"Wrongful Act" means <u>with respect to any Plan</u>: (1) any breach of the responsibilities, obligation or duties imposed upon fiduciaries of the Sponsored Plan by the Employee Retirement Income Security Act of 1974, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world; (2) any negligent act, error or omission in the Administration of any Plan committed, attempted or allegedly committed or attempted by any Insured; or (3) any other matter claimed against such Insured solely by reason of their service a fiduciary of any Sponsored Plan.

Doc. #18 Attach. #1 (ForeFront Policy) at 39-40 (emphasis added).

(ii)   <u>Parties' Contentions</u>

Just as under the ForeFront Policy's D&O coverage section, the parties' arguments here center around two parts of the Fiduciary Liability coverage section -- whether Ludy sustained a "Loss" and whether Ludy committed a "Wrongful Act." The arguments pertaining to the issue of "Loss" concern the same "taxes" exclusion, as is contained in the D&O coverage section. As to the "Wrongful Act" definition, the parties here additionally disagree about whether the acts in question were "with respect to a Plan."

52

(iii)     <u>Analysis</u>

Just as in the D&O coverage section, Federal is only required to provide coverage, under the Fiduciary Liability section, to the extent that Ludy sustained a "Loss."  The definitions of Loss provided by the two coverage provisions are identical, in that they both provide that "Loss does not include . . . taxes." <u>Compare</u> Doc. #18 Attach. #1 (ForeFront Policy; D&O) at 21; Doc. #18 Attach. #1 (ForeFront Policy; Fiduciary Liability) at 39.  The Court determined above that all portions of the sums that comprise Ludy's loss are "taxes" and that, therefore, Ludy did not sustain a "Loss," under the term of the D&O section of the ForeFront Policy.[36]  For identical reasons, the Court determines that Ludy did not sustain a "Loss," under the terms of the Fiduciary Liability section of the ForeFront Policy. Since Federal is, therefore, not required to provide coverage to Ludy, under the Fiduciary Liability section, it is unnecessary for the Court to address the question of whether Ludy committed a "Wrongful Act," under that section.

Thus, Federal's Motion to Dismiss Ludy's cross-claim (Doc. #28), as it pertains to the Federal ForeFront Policy Fiduciary Liability coverage section, is SUSTAINED.  Conversely, Ludy's Partial Motion for Summary Judgment (Doc. #36), as it pertains to the Federal ForeFront Policy Fiduciary Liability coverage section, is OVERRULED.

---

[36]<u>See</u>, *supra*, subparagraph B2a(iii) of this Section V.

C.    Bad Faith

As the final claim in its cross-claim, Ludy asserts that Federal breached its

duty of good faith and fair dealing by failing to adequately investigate Ludy's claim

and by failing to timely and appropriately pay that claim, without reasonable

justification. Doc. #24 (Ludy Cross-claim) at 18-19, ¶¶36-43.  Ludy further alleges

that such conduct evidences a lack of good faith and fair dealing, as well as a

conscious disregard for Ludy's rights and/or actual malice. Id. ¶¶ 44-45.  Federal

has moved to dismiss this part of Ludy's cross-claim (Doc. #28) and Ludy has

moved for partial summary judgment against Federal thereon (Doc. #36).

The Ohio Supreme Court recognizes the tort of insurer bad faith in situations

where an insurer "refuses to pay a valid claim." Thompson v. Cmty. Ins. Co., 213

F.R.D. 284, 302 (S.D. Ohio 2002) (citing Zoppo v. Homestead Ins. Co., 71 Ohio

St. 3d 552, 644 N.E.2d 397 (Ohio 1994)).

> A cause of action arises for the tort of bad faith when an insurer
> breaches its duty of good faith by intentionally refusing to satisfy an
> insured's claim where there is either (1) no lawful basis for the refusal
> coupled with actual knowledge of that fact or (2) an intentional failure
> to determine whether there was any lawful basis for such refusal.

Zoppo, 71 Ohio St. 3d at 554.  A claim against an insurer will only survive,

however, "if the record shows that there were no circumstances in the case which

could be viewed as creating a reasonable justification for that carrier's actions."

Thompson, 213 F.R.D. at 302 (citing Zoppo, 71 Ohio St. 3d 552) ("Mere refusal to

pay insurance is not, in itself, conclusive of bad faith.").

As previously determined, Ludy did not sustain a compensable "Loss," under

54

the terms of either Federal's D&O coverage section or Fiduciary Liability coverage

section.  Since Ludy did not present a valid claim, Federal had reasonable

justification for denying coverage and Ludy's bad faith claim fails, as a matter of

law.

Thus, Federal's Motion to Dismiss Ludy's cross-claim (Doc. #28), as it

pertains to Ludy's bad faith claim, is SUSTAINED.  Conversely, Ludy's Partial

Motion for Summary Judgment (Doc. #36), as it pertains to that claim, is

OVERRULED.


VI.    PREJUDGMENT AND POSTJUDGMENT INTEREST

Along with reimbursement for insurance benefits not paid, Ludy also seeks

prejudgment and post judgment interest. Doc. #24 (Ludy Counterclaim) at 11-12,

¶¶ 16,22.  As to prejudgment interest, Ohio Revised Code § 1343.03 provides that

plaintiffs who recover under breach of contract claims are entitled to an award of

prejudgment interest. See also Royal Elec. Constr. Corp. v. Ohio State Univ., 73

Ohio St.3d 110, 652 N.E.2d 687 (1995).  The interest accrues at the rate specified

in the contract or, in absence of such, the rate determined pursuant to Ohio

Revised Code § 5703.47. Ohio Rev. Code Ann. § 1343.03(A).  Thus, Ludy is

entitled to prejudgment interest on the entire amount of the judgment (i.e., the

amount of the losses that are attributable to the social security monies), as

calculated either under the terms of the Policy or pursuant to Ohio Revised Code

§ 5703.47.

It must be noted that the judgment ordered by this court cannot yet be quantified, given that the dollar value of the unpaid social security monies has not been presented to the court, upon which to base a specific monetary award of both pre and post-judgment interest.  However, such is not fatal to the Judgment ordered herein, United States v. F. & M. Schaefer Brewing Co., 356 U.S. 227 (1958) ("[A] final judgment for money must, at least, determine, or specify the means for determining, the amount.").  The Judgment ordered herein, by directing payment of an easily quantifiable sum of unpaid social security monies, for a date certain, does just that.

Under 28 U.S.C. § 1961, district courts are required to award post judgment interest.  The statute provides that "such interest shall be calculated from the date of the entry of the judgment," and "shall be computed daily to the date of payment." 28 U.S.C. § 1961 (a), (b).  Further, the Sixth Circuit has recognized that post judgment interest should be awarded on the entire amount of the judgment, to include the prejudgment interest element of the damages award, as well as any later awarded attorney fees or costs. Caffey v. Unum Life Ins. Co., 302 F.3d 576, 586, 589 (6th Cir. 2002).  Thus, Ludy is entitled to post judgment interest on the entire amount of the judgment, to include prejudgment interest and any later awarded attorney fees or costs, as calculated pursuant to 28 U.S.C. § 1961.

VII.    CONCLUSION

A.    Claims between Cross-Defendant Federal and Cross-Plaintiff Ludy

Cross-Defendant Federal's Motion to Dismiss (Doc. #28) and Motion to File Surreply Brief (Doc. #43) are SUSTAINED.  Cross-Defendant Federal's Motion to Strike Affidavit (Doc. #43) is OVERRULED.

Cross-Plaintiff Ludy's Motion for Partial Summary Judgment (Doc. #36) is OVERRULED.

All rulings hereunder, as to the claims between Federal and Ludy, are made on the condition that Cross-Defendant Federal provide proper Rule 56 evidence regarding the Federal Umbrella Policy (No. 7973-04-63 ITG) and the Federal ForeFront Policy (No. 8158-8788) to the Court, within ten (10) calendar days of the date of this Order, and that the terms of such Policies are identical, in all pertinent ways, to the terms of the copies of such Policies that were relied on by the Court in making its rulings herein.  Failing this, the Judgment entered herein will be vacated.


B.    Claims between Plaintiff Florists and Defendant Ludy

Plaintiff Florists' Motion for Summary Judgment (Doc. #41) is OVERRULED, as to the issue of coverage under the EBL Policy for losses attributable to social security payments, and is SUSTAINED, as to the remaining provisions of the Florists Policy.

The Court further orders Florists to pay Ludy's prejudgment interest from the date the losses became payable under the EBL Policy, until the date of this

57

judgment, with prejudgment interest to be computed at the rate provided in said

Policy or, in the absence thereof, as provided in Ohio Revised Code § 5703.47, as

well as post judgment interest from the date of the judgment ordered herein to the

date said insurance payments/monies are paid by Florists and received by Ludy,

with post judgment interest to be computed at the statutory rate.

The matter of attorney's fees will be dealt with on a post judgment basis.

White v New Hampshire Department of Employment Security, 455 U. S. 445

(1982) (requests for attorney's fees and costs are routinely addressed in post

judgment proceedings).  Not later than 30 days after the appeal time from this

court's judgment has run or, if appealed, not later than 30 days after the Appellate

Court's ruling (should this Court be affirmed), Plaintiff's counsel must submit an

itemized statement of fees and costs, setting forth the date and nature of the

particular service rendered, the time expended in doing so, and counsel's hourly

rate, including therein any fees and costs related to the appeal.  Opposing Counsel

will then have 20 days in which to respond to the submission of Plaintiff's

Counsel. Any attorney's fees granted will bear interest from the date of judgment

herein.

Defendant Ludy's Motion for Summary Judgment (Doc. #45) is SUSTAINED,

as to the issue of coverage under the EBL Policy for losses attributable to social

security payments, and is OVERRULED, as to the remaining provisions of the

Florists Policy.

Judgment is to be entered pursuant to this Opinion.

The above captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.


September 30, 2007


                                    ____ /s/ Walter Herbert Rice_____
                                    WALTER HERBERT RICE, JUDGE
                                    UNITED STATES DISTRICT COURT


Copies to:
Counsel of record